UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHEREVEPORT DIVISION

| | |
|---|---|
| JARIUS BROWN, | |
| Plaintiff, | Civil Action No. 5:21-cv-3415 |
| v. | Judge: |
| DEPUTY JAVARREA POUNCY, JOHN DOE 1, and JOHN DOE 2 | Magistrate Judge: |
| | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT**

**INTRODUCTION**

1. On September 27, 2019, while in custody for nonviolent vehicle offenses, multiple employees of the DeSoto Parish Sheriff's Office (the "Sheriff's Office") brutally beat Plaintiff Jarius Brown. Prior to the incident, Mr. Brown had complied with Defendants' requests. He did not resist his arrest or fail to follow any Sheriff's Office procedures. Nor did he make any attempts to injure or threaten Defendants. Instead, Mr. Brown remained stationary while Defendants—without legal justification, warning, or provocation—struck Mr. Brown in his face and torso several times with their fists, before transferring him to a holding cell.

2. No Sheriff's Office employees present during the attack acted to prevent Defendants' acts of violence or to ensure Mr. Brown's fair handling upon his arrival at the Sheriff's Office. Indeed, it was only after the violent attack concluded that Mr. Brown was able

to receive critical medical attention for the severe injuries and physical trauma the beating produced.

3.    During his hospital stay, Mr. Brown—who suffered from substantial injuries to the face, nose, and chest—struggled to remain conscious.  Mr. Brown also experienced mental and emotional trauma from the beating.  He still carries those injuries with him today and remains anxious and uneasy in the presence of law enforcement.

4.    The time has come to stop senseless beatings of people placed in detention facilities.  Mr. Brown files this Complaint and seeks recovery pursuant to 42 U.S.C. § 1983, the United States Constitution, and Louisiana state law.  This lawsuit alleges that Defendant Javarrea Pouncy and other fellow unknown officers—identified herein as John Does 1 through 2—carried out a malicious, violent, and traumatizing attack on Mr. Brown.  Following the attack, Deputy Pouncy became subject to a grand jury investigation surrounding the beating of Mr. Brown, and Deputy Pouncy subsequently resigned from the Sheriff's Office.

5.    That Mr. Brown's assailants are current and former deputies of the Sheriff's Office is consistent with evidence uncovered by recent media reporting that details an extensive history of violence and police brutality committed by Louisiana law enforcement officers.[1]  That conduct has unfortunately been present for at least a decade and has been implicitly endorsed by Louisiana State Police ("LSP") troopers and officials—the very force that initiated Mr. Brown's arrest in this instance.[2]

---

[1] *See*, Jim Mustain & Jake Bleiberg, *Beatings, buried videos a pattern at Louisiana State Police*, AP NEWS, Sept. 8, 2021, https://apnews.com/article/police-beatings-louisiana-video-91168d2848b10df739d73cc35b0c02f8.

[2] *Id.*

6. For the past decade, the State's most esteemed police force has ignored or concealed numerous pieces of evidence related to police brutality and misconduct and, by setting that example, has impeded efforts to discourage and mitigate police misconduct among other forces with which they interact. Specifically, LSP has routinely refused to release all relevant video footage related to violence committed by troopers against the citizens they are sworn to serve and protect, a majority of whom are Black men.[3]

7. Louisiana's one-year liberative prescription period for Section 1983 cases also contributes to the systematic lack of accountability for victims of police brutality in Louisiana — a violation of the spirit and intent of governing Supreme Court precedent. Incarcerated victims like Mr. Brown are both traumatized and entirely at the mercy of their abusers. In Mr. Brown's case, it was not until he was transferred to another facility away from the officers that abused him, that he began to recover and could begin pursing a case.

8. Sadly, Mr. Brown is one of countless Black men who have been unjustly brutalized by law enforcement.[4] Without accountability, law enforcement, and specifically those in DeSoto Parish, will continue to violate the rights of people like Mr. Brown, producing disastrous consequences.[5]

---

[3] *Id.* (AP reporting explaining that 67% of LSP uses of force in recent years have targeted Black people.)

[4] *See* Frank Edwards, et al*., Risk of being killed by police use of force in the United States by age, race – ethnicity, and sex,* 116 PNAS 16793, 16794 (2019) (finding that Black men are 2.5 more likely than white men to be killed by law enforcement)*;* Mark Hoekstra & Carly Will Sloan, *Does Race Matter for Police Use of Force? Evidence from 911 Calls, NBER,* Feb. 2020, https://www.nber.org/papers/w26774; Oliver Laughland, *US police have a history of violence against black people. Will it ever stop?*, THE GUARDIAN, Jun. 4, 2020, https://www.theguardian.com/usnews/2020/jun/04/american-police-violence-against-black-people.

[5] *See* Jamiles Larty & Abbie VanSickle, *'Don't Kill Me': Others Tell of Abuse by Officer Who Kenlt on George Floyd*, THE NEW YORK TIMES, Feb. 2, 2021, https://www.nytimes.com/2021/02/02/us/derek-chauvin-georgefloyd-past-cases.html.

## PARTIES

9. Plaintiff Jarius Brown is a 29-year-old man domiciled in the State of Louisiana within the Western District of Louisiana.

10. Defendant DeSoto Parish Sheriff's Office Deputy Javarrea Pouncy is sued in his individual capacity. Deputy Pouncy is named for violently beating Mr. Brown.

11. Defendant DeSoto Parish Sheriff's Office Deputy John Doe #1 is sued in his individual capacity. Deputy John Doe #1 is named for violently beating Mr. Brown.

12. Defendant Louisiana State Police Officer John Doe #2 is sued in their individual capacity. Officer John Doe #2 is named for his involvement in Mr. Brown's violent beating.

13. Mr. Brown is not aware of the true names of Does and therefore sues Does by such fictitious names. Mr. Brown will amend this complaint to state the true name and capacity of Does when such have been ascertained.

14. Defendants are persons for purposes of 42 U.S.C. § 1983 and, at all times pertinent and relevant to this action, were employed as commissioned deputies by the DeSoto Parish Sheriff's Office and were acting and/or neglected to act in the course and scope of their employment and under color of law. Plaintiff alleges that Defendants are responsible for his injuries as set forth herein.

15. Defendants are liable jointly, severally, and *in solido* for the intentional, excessive, and/or otherwise unconstitutional and tortious conduct set forth below.

## JURISDICTION AND VENUE

16. Jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1343 because the controversy arises under the U.S. Constitution and 42 U.S.C. § 1983. Plaintiff also invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) over state law claims.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are law enforcement officers who work and likely reside in this District, and because the wrongful conduct at issue in this matter occurred wholly within this District. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A. Deputies Employed by the DeSoto Parish Sheriff's Office Brutally Attack Plaintiff After His Arrest

18. On September 27, 2019, Plaintiff Jarius Brown was stopped and arrested by an LSP officer for alleged traffic violations and other controlled substance offenses.

19. Upon his arrest by LSP, Mr. Brown was put into handcuffs and searched. At the time of his arrest, he possessed a small bag of marijuana.

20. Shortly after his arrest, Mr. Brown was transported by LSP Officer John Doe #2 to the Sheriff's Office.

21. Upon information and belief, Mr. Brown arrived at the Sheriff's Office early in the morning of September 27.

22. Upon his arrival, Mr. Brown was transferred into the custody of Defendants Pouncy and John Doe #1 ("Officer Defendants"). It is unknown whether LSP Officer John Doe #2 said anything to Officer Defendants upon their arrival. LSP is currently under scrutiny by the Federal Bureau of Investigations and the Department of Justice for unlawful use of force and alleged encouragement thereof.

23. Mr. Brown was then led by Officer Defendants to the Sheriff's Office laundry room to change into a prison jumpsuit.

24. When Mr. Brown arrived in the laundry room, Officer Defendants instructed him to strip naked, bend over, and cough. Mr. Brown complied with these instructions and all other instructions given to him by Officer Defendants.

25. After removing his clothes, Mr. Brown turned to face Officer Defendants, who then without warning or provocation began to beat Mr. Brown. Officer Defendants hit Mr. Brown numerous times in his face and torso causing serious injuries.

26. Mr. Brown collapsed as a result of Officer Defendants' attack, after which Officer Defendants delivered one final blow to Mr. Brown's body before ceasing.

27. After succumbing to the violence, Mr. Brown was provided a prison jumpsuit by Officer Defendants and led to a holding cell where he remained in isolation—bloody, beaten and struggling to remain conscious, before his injuries were noticed by another officer at the Sheriff's Office.

28. Mr. Brown did not provoke the attack, nor did Defendants explain their actions contemporaneously or after the attack. Mr. Brown sustained injuries to his face and torso as a result of Defendants' punches. He was left bloody and with fractures to his face and eye socket. He also experienced significant pain in his chest.

29. Officer Defendants, by committing overt, hostile acts during the attack on Mr. Brown acted in concert and assisted one another to accomplish the unlawful purpose described above.

30. Although Mr. Brown is not aware whether any detention facility video exists of the brutal attack, officer bodycam video captures the state of Mr. Brown shortly after the beating. The still shot from that video below graphically depicts the physical and emotional effects of that

beating.



31. As a result of the injuries sustained, Mr. Brown was transported to Ochsner LSU Health Shreveport - LA where he was evaluated and treated for, among other things, (1) an orbital fracture on the left side of his face; (2) a fracture of his nasal bones; and (3) abrasions on his left eyelid. Officer Defendants were present at Ochsner LSU Health Shreveport - LA during the entirety of Mr. Brown's visit and treatment.

32. Mr. Brown felt threatened and uneasy during his treatment because of the continued presence of Officer Defendants.

    **B.**    **Mr. Brown's Federal Claims Are Timely Filed as Federal Law Precludes Application of Louisiana's One-Year Liberative Prescription Period**

33. Mr. Brown repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

34. Defendants beat Mr. Brown on September 27, 2019.

35. Although Louisiana courts have rotely applied Louisiana's one-year liberative prescription period for delictual actions to all Section 1983 cases,[6] Mr. Brown submits that the mechanical application of the one-year statute of limitations period is inconsistent with the spirit and intent of governing Supreme Court precedent, and Plaintiff asks this Court to clarify that Section 1983 actions in Louisiana based on a criminal assault like the one alleged here are subject to a two year statute of limitations that best equates with the comparable Louisiana prescription period.

### 1. Louisiana's One-Year Liberative Prescription Period Is Inconsistent with the Federal Interests of Section 1983

36. Section 1983 was enacted to protect individuals against state violations of pre-existing civil rights. It "was the product of congressional concern about the Ku Klux Klan-sponsored campaign of violence and deception in the South, which was 'denying decent citizens their civil and political rights'"[7] and was a remedy "against those who representing a State in some capacity were unable or unwilling to enforce a state law."[8]

37. Courts apply state residual statutes of limitation to Section 1983 claims.[9]

38. State statutes of limitations must be consistent with federal law and policy.[10] A Section 1983 statute of limitations is inconsistent with federal law if it does not respond to the practicalities of litigating a federal civil rights claim and does not take into account "policies that

---

[6] *Williams v. Ouachita Par. Sheriff's Dep't,* No. CV 17-0060, 2017 WL 4401891, at *3 (W.D. La. Aug. 28, 2017) ("Relying on *Owens,* supra, all three federal district courts in this state have declined to apply Article 3493.10's two year prescriptive period to section 1983 claims").

[7] *Owens v. Okure*, 488 U.S. 235, 249 n.11 (1989) (citations omitted).

[8] *Id.*

[9] *Id.* at 248.

[10] 42 U.S.C. § 1988; *Owens*, 488 U.S. at 239.

are analogous to the goals of the Civil Rights Acts."[11]  If state concerns are "inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Act, the resulting state statute of limitations may be inappropriate for civil rights claims."[12]

39. Courts apply residual statutes of limitation for Section 1983 matters to promote state interests in reducing confusion and unpredictability in litigation.[13]  However, residual statutes of limitation still must be consistent with federal interests.[14]

40. A state law may be "inconsistent" with federal law if it "discriminates against federal claims" or "fails to afford a reasonable time to the federal claimant."[15] An appropriate limitations provision "must account for the characteristics of litigation under the analogous federal statute, including the policies underlying and the practicalities involved in litigating the federal cause of action."[16]

41. A one-year liberative prescription period does not properly account for the policies underlying and the practicalities involved in litigating a civil rights claim.

42. "Litigating a civil rights claim requires considerable preparation,"[17] and the modern development of the qualified immunity doctrine has imposed an additional "high hurdle for civil rights plaintiffs[.]"[18]  This hurdle is particularly challenging because "[m]odern

---

[11] *Burnett v. Grattan*, 468 U.S. at 42, 50 (1984) (holding modified by *Wilson v. Garcia*, 471 U.S. 261, 105 (1985)).

[12] *See Burnett*, 468 U.S. at 53.

[13] *Owens*, 488 U.S. at 248.

[14] *Id.* at 251 n. 13.

[15] *See Burnett*, 468 U.S. at 60–61 (Rehnquist Concurrence).

[16] *McDonald v. Salazar*, 831 F. Supp. 2d 313, 319 (D.D.C. 2011).

[17] *See Burnett*, 468 U.S. at 42, 50–51.

[18] Jan Schweikert, *Qualified Immunity: A Legal, Practical, and Moral Failure*, 901 THE CATO INSTITUTE POLICY ANALYSIS, Sept. 14, 2020.

qualified immunity doctrine . . . has proven impossible to apply with predictability or consistency.  Indeed, there is perhaps no other Supreme Court doctrine that has engendered as much confusion and division among lower court judges as the Court's amorphous instructions on when a given right is clearly established, as both judges and commentators have recognized."[19]

43.     Modern understandings of the impact of crimes of violence suggest that victims may often significantly delay reporting a crime due to the associated trauma.  In "the best case," it can take six to twelve months for a victim of such a crime to reintegrate into a stable, functioning individual.[20]  Victims seek to avoid further conflict and many choose not to report while still under the stressful effects of victimization.[21]

44.     Police misconduct in particular has considerable and unique consequences for victims, making preparation of a federal civil rights lawsuit even more challenging.  "[T]he reality is that for many victims of police misconduct, one year is not nearly enough time to file a federal lawsuit."[22]  Victims of police misconduct experience a range of challenges as a result of their trauma, and the same factors that lead any victim to delay reporting the crime may be heightened in instances of police brutality.[23]  Incarcerated victims are often at the mercy of their abusers, with their housing, recreation, and well-being under the control of the very officers who

---

[19] *Id.*

[20] Rosa Casarez-Levison, *An Empirical Investigation of the Coping Strategies Used by Victims of Crime: Victimization Redefined*, in CRITICAL ISSUES IN VICTIMOLOGY: INTERNATIONAL PERSPECTIVES, 46-57, (EC Viano ED., 1992).

[21] M.S. Greenberg & R.B. Ruback, *After the Crime: Victim Decision Making*, 9 PERSPECTIVES IN LAW & PSYCHOLOGY, 1992.

[22] Dani Kritter, *The Overlooked Barrier to Section 1983 Claims: State Catch-All Statutes of Limitations*, CALIFORNIA LAW REVIEW (March 2021), https://www.californialawreview.org/the-overlooked-barrier-to-section-1983-claims-state-catch-all-statutes-of-limitations/.

[23] *Id;* Jordan DeVylder, et. al, *Impact of Police Violence on Mental Health: A Theoretical Framework* AMERICAN JOURNAL OF PUBLIC HEALTH, (July 09, 2020).

violated their rights. Members of marginalized groups are disproportionately the victims of police misconduct, yet these groups also disproportionally lack access to the civil justice system. "A victim of police brutality faces a stressful and unfair sprint to the courthouse if they are required to file a complicated federal civil rights claim within one year of the date of their injuries."[24]

45. The Supreme Court has thus invalidated a six-month statute of limitations to federal civil rights claims brought under 42 U.S.C. § 1983.[25] The Second Circuit has similarly held that federal law precludes application of a one-year statute of limitations to § 1983 claims.[26] Similarly, other courts have held that application of a one or even two-year statute of limitations to federal civil rights claims violates federal law.[27]

46. Applying Louisiana's one-year liberative prescriptive period for delictual actions to § 1983 claims would violate the federal policy underlying the Civil Rights Act, as Louisiana's

---

[24] *Id.*

[25] *See Burnett*, 468 U.S. at 42, 50.

[26] *Okure v. Owens*, 816 F.2d 45, 48–49 (2d Cir. 1987) (noting that the 3-year period "more faithfully represents the federal interest in providing an effective remedy for violations of civil rights than does the restrictive one year limit.) *affirmed on different grounds*, Owens v. Okure, 488 U.S. 235, 236 (1989).

[27] *See Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 239–40 (3d Cir. 2014) (refusing to apply Pennsylvania's two-year statute of limitations to an Establishment Clause challenge brought pursuant to § 1983 because, "[i]n sum, the significance of the constitutional interests at play, the minimal interests advanced by application of a limitations period, and the long-standing apparent exemption of Establishment Clause claims from such defenses convince us that it would be 'inconsistent with federal law or policy,'…to apply Pennsylvania's limitations period to Tearpock–Martini's Establishment Clause claim.); *Mason v. Owens-Illinois, Inc.*, 517 F.2d 520, 522 (6th Cir. 1975) ("This one year period, urged here by Owens-Illinois, applies only to action taken by the Ohio Civil Rights Commission itself, and hardly seems applicable to an action under s 1981 by a private litigant."); *Johnson v. Davis*, 582 F.2d 1316, 1319 (4th Cir. 1978) (rejecting 1-year statute of limitations because the "constitutional tort remedy" that "was created to protect such paramount federal rights as the right to vote, the right of free speech, and the right to be free from invidious discrimination, should not be relegated in the Virginia scheme of limitation periods to a period of only one year").

prescriptive period "fails to take into account [the] practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Act."[28]

### 2. Louisiana's One-Year Statute of Limitations Violates the Fourteenth Amendment's Guarantee of Equal Protection

47. The Louisiana State Legislature has allowed its hostility towards federal civil rights claims to affect its prescriptive period decision-making. This violates federal law,[29] including the Fourteenth Amendment's guarantee of equal protection.[30]

48. One year is the shortest residual statute of limitation in the country. Louisiana is one of just three states that adopts a one-year residual statute of limitation.

49. The Louisiana State Legislature has recognized the prohibitive nature of a one-year statute of limitation in extending prescriptive periods for other claims. It extended the one-year prescriptive period to three years for victims of child abuse, to provide those victims "a chance to recover and still have time to file suit."[31] It extended the one-year prescriptive period to two years for victims of crimes of violence, in order to provide those victims with more time to deal with parallel criminal and civil proceedings and not have to face discovery associated with litigation after suffering trauma.[32] And it extended the one-year prescriptive period to three

---

[28] *Burnett*, 468 U.S. at 50.

[29] *See id.* at 53 ("To the extent that particular state concerns are inconsistent with, or of marginal relevance to, the policies informing the Civil Rights Act, the resulting state statute of limitations may be inappropriate for civil rights claims.") (citations omitted).

[30] *United States v. Ramos,* No. 20-50527, at *4 (5th Cir. June 21, 2021) ("The Equal Protection Clause of the Fourteenth Amendment prohibits states from 'deny[ing] to any person within its jurisdiction the equal protection of the laws.' U.S. Const. amend. 14, § 1… [Plaintiff] must 'prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'").

[31] *See* Minutes of Meeting of House Civil Law and Procedure Committee, at 3 (May 10, 1988) (discussing H.B. 724).

[32] *See* Meeting of House Civil Law and Procedure Committee (June 7, 1999), at 22:58, available at https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/1999/jun/0607_99_CL (discussing in S.B. 156).

years for victims of sexual assault, to provide those victims with more time to cope with the trauma of their situation before having to decide whether to pursue civil litigation.[33]

50. Mr. Brown's assault by DeSoto Parish officers is a crime of violence under La. Civ. Code Ann. art. 3493.10. He was severely beaten by two officers while he was defenseless, suffering facial fractures, lacerations, and chest pain. Although Mr. Brown would have a two-year period to bring a claim under Louisiana state law, bringing a Section 1983 action for the same underlying crime results in a shorter prescription period.

51. The Louisiana State Legislature has rejected several proposals to extend the one-year liberative prescription period for delictual actions. In one case (S.B. 83), Former Louisiana State Senator Daniel Martiny—the former Louisiana Senate Majority Leader (from 2012 to 2020), the Chairman of the Senate Republican Legislature Delegation, and the former Chairman of the Senate Judiciary B Committee (from 2008 to 2012)—stated during the hearing discussing the proposal to extend the one-year period that "90% of what I do for a living is defend police departments," and described how defending law enforcement in § 1983 cases would become more challenging if the time period were extended for suits.[34] Although the bill ultimately died, the final version of the bill proposed a two-tier liberative prescription period: it retained a one-year liberative prescription period for claims against the State of Louisiana "or one of its

---

[33] *See* Meeting of House Civil Law and Procedure Committee (April 12, 2016), at 41:54, available at https://house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2016/apr/0412_16_CL; Minutes of Meeting of Senate Judiciary A Committee, at 6 (May 17, 2016); Meeting of Senate Judiciary A Committee (May 17, 2016), at 28:39, available at http://senate.la.gov/video/videoarchive.asp?v=senate/2016/05/051716JUDA_0 (discussing H.B. 556).

[34] Louisiana State Senate, Senate Broadcast Archived Videos, Senate Judiciary A Committee, April 12, 2016 at 1:58:15-1:58:35.

13

departments, agencies, offices, or political subdivisions," but extended the period to two years for all other delictual actions.[35]

52. The Legislature's actions reveal an intent to discriminate against civil rights plaintiffs in violation of the Fourteenth Amendment. Civil rights plaintiffs who have suffered from crimes of violence are treated differently from non-civil rights plaintiffs who have suffered from the same crime.

53. Given the challenges involved in prosecuting civil rights violations, the Louisiana State Legislature's demonstrated hostile attitude towards federal civil rights claims, and the outlier nature of Louisiana's one-year statute of limitations period for federal civil rights claims, federal law prohibits application of Louisiana's one-year prescriptive period to federal civil rights claims. The Supreme Court has specifically "disapproved the adoption of state statutes of limitation that provide only a truncated period of time within which to file suit, because such statutes inadequately accommodate the complexities of federal civil rights litigation and are thus inconsistent with Congress' compensatory aims."[36]

## FIRST CAUSE OF ACTION

**EXCESSIVE USE OF FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENT UNDER 42 U.S.C. § 1983
(AGAINST ALL DEFENDANTS)**

54. Mr. Brown repeats and realleges each and every allegation contained in the previous paragraphs of this Complaint as if fully alleged herein.

---

[35] *See* Fiscal Note on S.B. 83, Louisiana Legislative Fiscal Office (Apr. 25, 2016), http://www.legis.la.gov/legis/ViewDocument.aspx?d=997064.

[36] *Felder v. Casey*, 487 U.S. 140 (1988) (superseded by statute on other grounds).

55. Plaintiff in this action is a citizen of the United States and all Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

56. At all times relevant hereto, the individual Defendants were acting under the color of state law in their capacity as DeSoto Parish correctional officers and their acts or omissions were conducted within the scope of their official duties or employment.

57. The Fourth Amendment of the U.S. Constitution protects citizens against unreasonable search and seizure by law enforcement officers.

58. The Fourteenth Amendment of the U.S. Constitution protects citizens against arbitrary deprivation of life, liberty, or property by the state.

59. It was clearly established at the time of Mr. Brown's arrest that the Fourth and Fourteenth Amendments prohibit law enforcement officials from using an unreasonable level of force during an arrest and detention.

60. The individual Defendants' actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them. They accordingly violated Mr. Brown's Fourth Amendment rights.

61. The individual Defendants' actions and use of force, as described herein, were also malicious and involved willful, outrageous, reckless and flagrant misconduct, and deliberate indifference to Mr. Brown's federally protected rights.

62. The level of force used by Defendants against Mr. Brown was objectively unreasonable because: (1) the offenses that Defendants arrested Mr. Brown for committing were traffic violations; (2) Mr. Brown complied with Defendants' instructions; and (3) Mr. Brown did not resist arrest.

63. None of the individual Defendants took reasonable steps to intervene and protect Mr. Brown from the objectively unreasonable and excessive force despite being in a position to do so.

64. Any reasonable law enforcement officer would have known that using this level of force to detain Mr. Brown would violate his clearly established constitutional rights.

65. All Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Brown's federally protected constitutional rights.  These individual Defendants acted in concert and joint action with each other.

66. The acts or omissions of the individual Defendants were moving forces behind Mr. Brown's injuries.  As a direct and proximate result of Defendants' excessive force, Mr. Brown suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

67. Defendants are not entitled to qualified immunity for their conduct, because their use of force against Mr. Brown violated his clearly established constitutional rights and was objectively unreasonable.

68. Mr. Brown is entitled to attorneys' fees and costs under 42 U.S.C. § 1988, prejudgment interest, and costs allowable by federal law.

69. Mr. Brown is also entitled to punitive damages against each Defendant under 42 U.S.C. § 1983 because Defendants' actions were malicious, willful, or committed with reckless or wanton disregard for Mr. Brown's constitutional rights.

## SECOND CAUSE OF ACTION
## BATTERY IN VIOLATION OF LA REV STAT § 14:35
### (AGAINST INDIVIDUAL DEFENDANTS POUNCY AND DOE # 1)

70. Mr. Brown hereby incorporates all other paragraphs of this Complaint.

71. Mr. Brown asserts violations of Louisiana state law relative to intentional torts by the individual Defendants.

72. Defendants were acting within the course and scope of their employment with DeSoto Parish Sheriff's Office.

73. Officers are liable for civil torts when they preform, "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."[37] Under this standard, "only the most egregious conduct by parish agents, employees or representatives that exhibits an active desire to cause harm, or a callous indifference to the risk of potential harm from flagrantly bad conduct, will rise to the level of 'willful misconduct' or 'criminal, willful, outrageous, reckless, or flagrant misconduct…'"[38]

74. Mr. Brown's attack is consistent with Louisiana's interpretation of a "crime of violence" and thus Defendants' conduct falls under the two-year statute of limitation of La. Civ. Code Ann. art. 3493.10. As described fully above, Mr. Brown was brutally beaten by two DeSoto Parish deputies while Mr. Brown remained in a defenseless and harmless position. He suffered facial fractures, lacerations, and chest pain as a result of the attack. The severity of this attack escalated Defendants' conduct to second degree battery, one of the qualifying crimes of violence under La. R.S. 14:2(13).

---

[37] Section 2798.1.

[38] Haab ex rel. Children v. E. Bank Consol. Special Serv. Fire Prot. Dist. of Jefferson Parish, 139 So. 3d 1174, 1182 (La. Ct. App. 2014).

75.     Defendants at all times relevant hereto were acting under color of state law.

76.     Defendants intended to inflict serious bodily injury. Specific intent may be "inferred from the circumstances surrounding the offense and the conduct of the defendant."[39]

77.     Defendants intended to cause serious physical harm to Mr. Brown by hitting him numerous times in his face and torso without provocation.

78.     The acts or omissions of Defendants, as described herein, deprived Mr. Brown of his constitutional rights and caused him other damages.

79.     As a direct and proximate result of the intentional acts of Defendants, carried out in reckless disregard, Mr. Brown suffered physical injury and continues to suffer from severe shock, distress, anguish, sorrow, and loss of enjoyment of life.

80.     The aforementioned physical and psychological injuries sustained by Mr. Brown were caused wholly by reason of the intentional acts of Defendants as described herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

a.     Declare that Defendants' conduct violated the Fourth and Fourteenth Amendments to the U.S. Constitution;

b.     Order that Defendants issue a formal apology to Mr. Brown for their unlawful actions;

---

[39] State v. Walker, 53,975 (La. App. 2 Cir. 6/30/21).

  c. Award Plaintiff damages compensating him for his physical and emotional harms, including but not limited to compensatory, pecuniary, and medical expense damages according to proof.

  d. Award Plaintiff punitive damages for Defendants' conduct.

  e. Award Plaintiff his reasonable attorneys' fees and the costs incurred in bringing this action; and

  f. Grant Plaintiff such other and further relief as the Court deems just and proper.

By: */s/ Megan Snider*
Megan E. Snider
LA. Bar No. 33382
Nora Ahmed*
ACLU FOUNDATION OF LOUISIANA
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: 504 522 0628
msnider@laaclu.org
nahmed@laaclu.org

*Pro hac vice forthcoming*

and

By: */s/ Michael X. Imbroscio*
Michael X. Imbroscio (Bar No. 445474)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
mimbroscio@cov.com

*Pro hac vice forthcoming*

*Counsel for Plaintiff Jarius Brown*