**CIVIL ACTION NO. 5:21-cv-3415**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JARIUS BROWN,
*Plaintiff,*

v.

DEPUTY JAVARREA POUNCY, and
DEPUTIES JOHN DOE 1, and JOHN DOE 2,
*Defendants.*

JUDGE ELIZABETH E. FOOTE
MAGISTRATE JUDGE HORNSBY

**BRIEF OF *AMICUS CURIAE* PUBLIC JUSTICE
IN SUPPORT OF PLAINTIFF**

WILLIAM MOST
*Counsel of Record*
MOST & ASSOCIATES
201 St. Charles Avenue
Ste. 114, # 101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

ELLEN NOBLE
(pro hac vice motion pending)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite 630
Washington, DC 20036
(240) 620-3645
enoble@publicjustice.net

*Counsel for Amicus Curiae*

**TABLE OF CONTENTS**

INTEREST OF *AMICUS CURIAE* ................................................................................................ 1

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    Applying Louisiana's One-Year Residual Limitations Period to Mr. Brown's Claim Is Inconsistent with the Primary Federal Policy Underlying § 1983. .................................. 3

    II.   Because the Designated State-Law Limitation Is Inconsistent with § 1983, This Court Should Apply the Four-Year Residual Limitation for Federal Statutes Provided by 28 U.S.C. § 1658. ............................................................................................................. 8

CONCLUSION ............................................................................................................................. 10

## INTEREST OF *AMICUS CURIAE*

Public Justice is a nonprofit legal advocacy organization that specializes in precedent-setting, socially-significant civil litigation, with a focus on fighting corporate and governmental misconduct. The organization maintains an Access to Justice Project that pursues litigation and advocacy efforts to remove procedural obstacles that unduly restrict the ability of workers, consumers, and people whose civil rights have been violated to seek redress for their injuries in the civil court system. This case is of interest to Public Justice because it raises questions regarding the applicable statute of limitations for § 1983 claims. The improper application of statutes of limitations is a major procedural barrier that prevents individuals whose federal rights have been violated from enforcing those rights in court.

## INTRODUCTION

Congress passed § 1 of the Enforcement Act of 1871, today codified at 42 U.S.C. § 1983, to allow victims of civil rights abuses to prosecute claims against state actors in federal court rather than state court. But Defendants are asking this Court to apply a statute of limitations that would flip that purpose on its head by relegating victims with timely state-law claims against state actors to the very courts § 1983 was designed to avoid. Even though § 1983 was meant to provide such plaintiffs with a federal forum in lieu of state courts, Defendants argue for a procedural barrier that applies only to federal civil rights claims in federal court, and that makes federal court less accessible to victims of civil rights abuses than state court.

Congress did not specify a statute of limitations in enacting § 1983, but instead instructed courts to borrow the appropriate limitations period from the forum state. *See* 42 U.S.C. § 1988. The Supreme Court in *Wilson v. Garcia*, 471 U.S. 261 (1985), and *Owens v. Okure*, 488 U.S. 235 (1989), instructed courts on which state-law statute of limitations to borrow, explaining that courts

1

should apply the forum state's general or residual statute of limitations for personal injury actions. But the Court in both *Wilson* and *Owens* recognized that there is always a final inquiry before a court can apply a state-law limitation: per the text of § 1988, courts may not apply a state-law limitation if it is "inconsistent" with the federal policy underlying § 1983.

This brief argues that while federal courts should generally apply the forum state's residual limitation for personal injury actions to § 1983 claims, they cannot do so in the limited circumstances where, as here, the residual limitations period is shorter than the statute of limitations that would apply to an analogous state-law claim. Applying a one-year residual limitation to time bar Mr. Brown from a federal forum, even though he could still timely file an analogous state-law action based on the same facts in state court, is categorically inconsistent with the federal policy underlying § 1983: to provide individuals whose federal rights have been violated with access to federal courts in lieu of state courts.

Additionally, this brief explains which statute of limitations *should* apply when application of the general or residual personal injury limitation would be inconsistent with § 1983. The Supreme Court, faced with a similar situation, instructed courts to look to related federal laws designed to accommodate a balance of interests similar to those at stake in the federal statute providing the cause of action. For that reason, the better source from which to draw is the residual four-year limitation for federal statutes codified at 28 U.S.C. § 1658. While the law does not by its terms apply to § 1983, it was enacted to balance the very same interests at stake in setting a statute of limitations for § 1983 claims and is therefore well-suited to fill the legal gap when a state-law limitation is inconsistent with the federal policy of § 1983. Because applying Louisiana's one-year residual personal injury limitation would be inconsistent with § 1983, this Court should apply the

residual four-year limitation for federal statutes codified, and hold that Mr. Brown's claim is timely.

## ARGUMENT

I. Applying Louisiana's One-Year Residual Limitations Period to Mr. Brown's Claim Is Inconsistent with the Primary Federal Policy Underlying § 1983.

Applying Louisiana's one-year statute of limitations in this case is inconsistent with § 1983's policy of ensuring access to a neutral federal forum in lieu of state court because it would make federal court *less* accessible than state court and *more* hostile towards civil rights claims. Section 1988 "endorses the borrowing of state-law limitations provisions" for § 1983 claims but only "where doing so is consistent with federal law." *Owens*, 488 U.S. at 239. The Supreme Court has held that courts should borrow the forum state's general or residual personal injury statute of limitations for § 1983 claims, but "*only if* [that limitation] is not 'inconsistent with the Constitution and laws of the United States.'" *Burnett v. Grattan*, 468 U.S. 42, 48 (1984) (emphasis added) (quoting 42 U.S.C. § 1988).

A state statute of limitations is inconsistent with federal law if its "application . . . 'would be inconsistent with the federal policy underlying the cause of action under consideration.'" *Robertson v. Wegmann*, 436 U.S. 584, 590 (1978); *see also Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377 (2004) (recognizing a "settled practice . . . to adopt a local time limitation as federal law if it [is] not inconsistent with federal law or policy to do so"); *Owens*, 488 U.S. at 239 (same).

Applying a statute of limitations to a § 1983 claim that is *shorter* than the limitation that would apply to an analogous state-law claim is inconsistent with the federal policy underlying § 1983 because it eviscerates the law's primary purpose: to provide victims of civil rights deprivations with access to federal courts in lieu of state courts. *See Monroe v. Pape*, 365 U.S.

3

167, 174–80 (1961). Congress enacted the law "to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice" as a result of those "representing [the] State . . . [being] unable or unwilling to enforce a state law." *Id.* at 174, 176. Indeed, "[i]t was not the unavailability of state *remedies* but the failure of certain States to *enforce* the laws with an equal hand that furnished the powerful momentum behind this [law]." *Id.* at 174–75 (emphases added). In enacting § 1983, Congress "was concerned that state instrumentalities could not protect [federal] rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972). Thus, the federal policy underlying § 1983 was to give civil rights plaintiffs access to federal courts, providing them a forum where they would not face hostility or discrimination for asserting claims against state actors.

But applying a shorter statute of limitations to a § 1983 action than would apply to a state-law action based on the same set of facts flips that federal policy on its head. It imposes a state-law-derived procedural barrier on civil rights plaintiffs' access to federal courts, forcing those victims to bring their claims against state actors in state court.[1] Giving a plaintiff *less* opportunity to seek redress for the deprivation of a federal right in federal court under § 1983 than would be afforded to them by state laws in state court is inconsistent with the federal policy underlying § 1983 because it requires the plaintiff to vindicate their civil rights in state court in lieu of federal court.

---

[1] Whether this Court believes that state courts today will fairly enforce claims against state actors is beside the point. Courts must look at the original federal policy underlying the statute at the time it was enacted. *See Burnett*, 468 U.S. at 52 n.14 (assessing conflict between state statute and "Congress' policy *enacted in* the relevant substantive law" (emphasis added)); *Robertson*, 436 U.S. at 591 (identifying "underlying policies" of § 1983 by looking to cases examining the law's purpose when it was first enacted).

4

Justice Rehnquist made this very point in *Burnett*. He explained that a state statute of limitations is inconsistent with the policy underlying § 1983 if it "discriminates against federal claims, such that a federal claim would be time-barred, while an equivalent state claim would not." 468 U.S. at 60–61 (Rehnquist, J., concurring in the judgment); *see also Johnson v. Davis*, 582 F.2d 1316, 1317, 1319 (4th Cir. 1978) (holding that "a shorter period for remedying a 'constitutional tort' than for remedying the underlying state tort" would constitute "an unreasonable discrimination between the assertion of federally protected rights and rights protected under Virginia law"). Therefore, while courts must generally—per *Owens*—apply the forum state's general or residual personal injury limitation to a § 1983 claim, courts cannot apply that limitation when it is *shorter* than the limitation for an analogous state-law claim, which would make federal court less accessible than state court.

Louisiana's one-year residual personal injury limitation is shorter than the limitation that would apply if Mr. Brown brought an analogous state-law claim in state court. As Mr. Brown has correctly asserted, his claims under state law would be subject to Louisiana's two-year statute of limitations because his "damages [were] sustained as a result of an act defined as a crime of violence." La. Civ. Code Ann. art. 3493.10; *see* Pl.'s Opp'n 19, 22; Compl. ¶ 50. State law defines a crime of violence to include second-degree battery, which is "the intentional use of force or violence upon the person of another" "when the offender intentionally inflicts serious bodily injury." La. Stat. Ann. §§ 14:2(B)(6), 14:33, 14:34.1(A). Mr. Brown has alleged that Defendants' use of force was intentional and his injury serious. *See* Compl. ¶¶ 25–28, 74 (alleging unprovoked attack resulting in fractures to his face and eye socket that left Mr. Brown struggling to remain

conscious).[2] Thus, if Mr. Brown brought his claims against Defendants under state law, they would be subject to a two-year statute of limitations—twice as long as the one-year limitation Defendants seek to impose on his § 1983 claim.

Applying the one-year limitation would bar Mr. Brown from the federal forum that § 1983 was meant to provide, even though his analogous state-law claim, predicated on the very same facts, would be timely in state court. As explained above, that result is inconsistent with—indeed, antithetical to—the federal policy of providing a neutral, federal forum in lieu of state court for civil rights claims. Application of the one-year limitation discriminates against the federal forum, making it *less* accessible than the state court alternative.[3]

Defendants may try to argue that this argument is foreclosed by the Supreme Court's decisions in *Wilson* and *Owens*. But neither of those cases addressed the situation presented here: where the otherwise applicable general or residual personal injury statute of limitations is *shorter than* the analogous state-law limitation. The *Wilson* court applied the same three-year limitations period to the plaintiff's § 1983 claims that the Tenth Circuit below had found to apply to plaintiff's analogous state-law claim; and the *Owens* court applied a residual personal injury statute of

---

[2] Louisiana courts have regularly found that similar, as well as less severe, injuries support a conviction for second-degree battery. *See State v. Helou*, 857 So. 2d 1024, 1028–29 (La. 2003) (citing cases); *see also Harris v. Warden, La. State Penitentiary*, No. 12-cv-1731, 2015 WL 5231266, at *3–4 (W.D. La. Aug. 11, 2015), *report and recommendation adopted*, No. 12-cv-1731, 2015 WL 5244413 (W.D. La. Sept. 8, 2015) (victim suffering bruises to a foot and knee and complaining of pain inflicted by pepper spray).

[3] This is just one way Louisiana's one-year limitation is inconsistent with § 1983. The Supreme Court has also recognized a state-law limitation may be inconsistent "if it fails to take into account practicalities that are involved in litigating federal civil rights claims," or if it reflects a "legislative choice" on the part of the forum state to limit remedies to victims of federal civil rights deprivations. *Burnett*, 468 U.S. at 50, 54–55. Mr. Brown's brief explains how Louisiana's one-year residual personal injury limitation may be inconsistent for these reasons too. *See* Pl.'s Opp'n at 12–20.

limitations that was *longer* than the statute of limitations applicable to the state-law analogue. Indeed, in neither case did the Court explore whether the state-law limitation being applied was "inconsistent" with federal policy. In *Owens*, the Court expressly noted that it was not reaching the question. *See* 488 U.S. at 251 n.13.

No court has ever addressed the argument presented here.[4] Defendants may point to instances where this court has applied Louisiana's one-year residual personal injury limitation to § 1983 actions without considering whether an analogous state-law claim would be subject to a longer limitations period. But in none of those cases did the court consider whether the application of the one-year limitation was inconsistent with the federal policy underlying § 1983 because it was shorter than the state-law analogue. Ultimately, no court may "favor contemporaneous or later practices *instead of* the laws Congress passed," *McGirt v. Oklahoma*, 140 S. Ct. 2452, 2468 (2020), and § 1988 requires courts *not* to borrow a state-law statute of limitations when doing so would be inconsistent with policy underlying § 1983.

Section 1983 was designed to provide a federal court backstop for enforcing claims predicated on deprivations of federal civil rights by state actors. To close the federal forum to such claimants when the state forum is still open to them turns the federal statute inside out.

---

[4] In *King-White v. Humble Independent School District*, 803 F.3d 754, 758–59 (5th Cir. 2015), the Fifth Circuit held that plaintiffs' § 1983 claim alleging sexual assault was subject to Texas's two-year residual personal injury limitation rather than the state's five-year limitation for sexual assault. Plaintiffs only argued that the state's five-year limitation should apply notwithstanding *Owens* because the residual statute of limitations included a specific reference to it. Since plaintiffs did not argue that applying the two-year limitation would be inconsistent with federal policy underlying § 1983, the court did not consider that distinct issue.

**II.     Because the Designated State-Law Limitation Is Inconsistent with § 1983, This Court Should Apply the Four-Year Residual Limitation for Federal Statutes Provided by 28 U.S.C. § 1658.**

When applying the residual state-law limitation would be inconsistent with § 1983—as applying Louisiana's one-year limitation would be here—courts should look to federal law for the timeliness rule to be applied. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 162 (1983) (explaining that, when "state statutes of limitations [are] unsatisfactory vehicles for the enforcement of federal law," the Court has "instead used timeliness rules drawn from federal law—either express limitations periods from related federal statutes, or such alternatives as laches").

Applying that principle here, this Court should recognize that Louisiana's one-year limitation is inconsistent with the federal policy underlying § 1983 and instead apply the residual "catchall 4–year statute of limitations for actions arising under federal statutes enacted after December 1, 1990" codified at 28 U.S.C. § 1658. *Jones*, 541 U.S. at 371. "[W]hen the state limitations periods with any claim of relevance would 'frustrate or interfere with the implementation of national policies,' or be 'at odds with the purpose or operation of federal substantive law,'" the Supreme Court has "looked for a period that might be provided by analogous federal law, more in harmony with the objectives of the immediate cause of action." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (citations omitted) (quoting *DelCostello*, 462 U.S. at 161). Specifically, it has directed courts in this situation to apply "related" federal statutes of limitations, especially when they are "actually designed to accommodate a balance of interests very similar to th[ose] at stake." *DelCostello*, 462 U.S. at 162, 169. Although § 1658 does not apply by its own terms to § 1983 actions, it is designed to balance the very same interests that are at stake in setting a timeliness rule for such actions. Congress's interest when enacting § 1658 was to "alleviat[e] the uncertainty inherent in the practice of borrowing state statutes of limitations while at the same time

protecting settled interests." *Jones*, 541 U.S. at 382. Congress made § 1658 prospective rather than retroactive so as to not obviate "the difficult work [that] already has been done" in borrowing state-law limitations periods. *Id.* But where, as here, the borrowed state-law limitation is inconsistent with § 1983, that rationale is immaterial. The four-year catchall statute of limitations for federal statues reflects the very same balance of interests—including § 1983's "chief goals of compensation and deterrence" and its "subsidiary goals of uniformity and federalism," *Hardin v. Straub*, 490 U.S. 536, 539 (1989)—that are at stake when courts must determine a timeliness rule for § 1983 actions.

Moreover, applying the four-year limitations period in § 1658 where the designated state-law limitation is inconsistent with § 1983 would further the uniformity and predictability interests that drove the Court's decisions in *Wilson* and *Owens*. *See Wilson*, 471 U.S. at 270 (discussing "federal interest in uniformity"); *Owens*, 488 U.S. at 243, 248 (discussing predictability concerns). If § 1658 fills the gap where applying the state-law limitation would be inconsistent, there would be only two possible statutes of limitations for any § 1983 claim: the general or residual state-law personal injury limitations period designated by *Wilson* and *Owens*, or the four-year federal limitations period in § 1658.

In short, when the state-law residual statute of limitations is longer than the limitation that would apply to an analogous state-law claim, courts should apply the catchall four-year statute of limitations in § 1658 because it is a "closely related" federal statute that reflects the same balance of interests at stake in setting a timeliness requirement for the filing of § 1983 actions, and because doing so promotes uniformity and predictability.[5]

---

[5] In the alternative, this Court could also borrow a more suitable statute of limitations from state law, such as one that would apply to an analogous state-law claim. *See* Pl.'s Opp'n at 19. However, because applying the four-year limitation in § 1658 would better embody the

## CONCLUSION

For the reasons above, this Court should hold that applying Louisiana's one-year limitation to Mr. Brown's § 1983 claim would be inconsistent with § 1983's primary purpose, and that his claim is timely under the applicable four-year limitation in § 1658.

Dated: April 21, 2022

Respectfully submitted,

 /s/ *William Most*

WILLIAM MOST
*Counsel of Record*
MOST & ASSOCIATES
201 St. Charles Avenue
Ste. 114, # 101
New Orleans, LA 70170
(504) 509-5023
williammost@gmail.com

ELLEN NOBLE
(pro hac vice pending)
PUBLIC JUSTICE, P.C.
1620 L Street, NW, Suite 630
Washington, DC 20036
(240) 620-3645
enoble@publicjustice.net

*Counsel for Amicus Curiae*

---

uniformity and predictability goals that the Court emphasized in *Wilson* and *Owens*, "the federal policies at stake . . . make that rule a significantly more appropriate vehicle for interstitial lawmaking." *DelCostello*, 462 U.S. at 172.